PEOPLE v SMITH

PEOPLE v MAYS

Docket No. 74704. Argued January 14, 1986 (Calendar No. 11). Docket
No. 75883. Argued February 7, 1986 (Calendar No. 11). Decided
May 29, 1986.

Joseph Smith was convicted by a jury in the Presque Isle Circuit
Court, Robert R. Ferguson, J., of first-degree criminal sexual
conduct. The Court of Appeals, D. E. Holbrook, Jr., P.J., and
Bronson and Tahvonen, JJ., affirmed in an unpublished opin-
ion per curiam, finding that the examining physician was
correctly permitted to testify that the complainant had been
sexually assaulted on the basis of the emotional state of, and
the history given to him by, the complainant (Docket No.
66807). The defendant appeals.

Grady L. Mays, Jr., was convicted by a jury in the Kalamazoo
Circuit Court, C. H. Mullen, J., of two counts of first-degree
criminal sexual conduct. The Court of Appeals, R. B. Burns
and Maher, JJ. (Allen, P.J., dissenting), reversed in an unpub-
lished opinion per curiam, holding that the examining physi-
cian's opinion concerning whether the complainant was pene-
trated against her will should have been limited to the physi-
cian's physical examination (Docket No. 65402). The people
appeal.

In a unanimous opinion by Justice Riley, the Supreme Court
*held:*

Expert testimony in sexual assault cases may be admitted, in
the discretion of the trial court, where the court determines
that the subject matter of the testimony involves special skill

REFERENCES

Am Jur 2d, Expert and Opinion Evidence §§ 16, 27, 37, 38, 103, 181,
185.

Am Jur 2d, Rape § 68.

Admissibility, at criminal prosecution, of expert testimony on rape
trauma syndrome. 42 ALR4th 879.

Admissibility of expert testimony as to criminal defendant's propen-
sity toward sexual deviation. 42 ALR4th 937.

See also the annotations in the ALR3d/4th Quick Index under
Expert and Opinion Evidence; Rape.

and training beyond the experience of the average person, that the testimony will aid the trier of fact in making the ultimate decision in the case, and that the probative value of the testimony is not outweighed by the likelihood of prejudice, confusion, or waste of time. In *Smith,* admission of the expert's testimony was error; the testimony was not based on the expert's special skills as a physician, but was, in effect, an assessment of the complainant's credibility. In *Mays,* the expert's testimony, grounded upon objective evidence resulting from his examination of the complainant, was sufficient.

1. The critical inquiry with regard to expert testimony is whether the testimony will aid the trier of fact in making the ultimate decision in a case. If the trial court determines that the special skill and training of an expert will assist the trier of fact in understanding the evidence or determining a fact in issue, the expert may testify in the form of opinion or otherwise, even where the testimony embraces the ultimate issue to be decided by the trier of fact. The determination of admissibility is within the discretion of the trial court and will vary according to the subject matter at issue and the particular facts of a case. The determination should be made on the basis whether the expert's testimony will assist the trier of fact in understanding the evidence or the factual issues. Expert opinion need not be admitted where a common-sense inquiry reveals that an untrained layman would be qualified to determine intelligently the matter at issue without such opinion. The examining physician in a case involving first-degree criminal sexual conduct is a proper witness so long as the testimony offered may assist the jury.

2. In *Smith,* the expert's testimony should not have been admitted because his opinion that the complainant had been sexually assaulted was not based on medical knowledge or experience, but, rather, on the emotional state of, and the history given by, the complainant. To the extent that the expert's testimony was based on the complainant's emotional state, the record did not support a finding that the expert was qualified to draw inferences from such evidence. His testimony was merely an inadmissible lay witness' opinion regarding the believability of the complainant's story. Because the defense was consent, the credibility of the victim and the defendant was the crucial issue.

3. In *Mays,* the expert testified regarding objective evidence on which he expressed the opinion that the complainant had been penetrated against her will. Cross-examination was available, and used, to expose the true basis of the opinion. Evidence

of the use of force or coercion was relevant in light of the defendant's claim that the acts were consensual. Thus, the expert's opinion with regard to forcible penetration was proper so long as it was based on a proper factual foundation.

*Smith,* reversed and remanded.

*Mays,* reversed.

1. RAPE — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — EXPERT WITNESSES.

Expert testimony in sexual assault cases may be admitted, in the discretion of the trial court, where the court determines that the subject matter of the testimony involves special skill and training beyond the experience of the average person, that the testimony will aid the trier of fact in making the ultimate decision in the case, and that the probative value of the testimony is not outweighed by the likelihood of prejudice, confusion, or waste of time (MRE 702).

2. WITNESSES — EXPERT WITNESSES — OPINIONS OF EXPERTS — ULTIMATE ISSUES.

Where a trial court determines that expert testimony will assist the trier of fact in understanding the evidence or determining a fact in issue, the expert may testify in the form of opinion or otherwise, even where the testimony embraces the ultimate issue to be decided by the trier of fact (MRE 702, 704).

3. WITNESSES — EXPERT WITNESSES — ADMISSIBILITY OF TESTIMONY.

The determination of the admissibility of expert testimony is within the discretion of the trial court and will vary according to the subject matter at issue and the particular facts of a case; the determination should be made on the basis whether the expert's testimony will assist the trier of fact in understanding the evidence or the factual issues; expert opinion need not .be admitted where a common-sense inquiry reveals that an untrained layman would be qualified to determine intelligently the matter at issue without such opinion (MRE 702).

4. RAPE — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — EXPERT WITNESSES.

The examining physician in a case involving first-degree criminal sexual conduct is a proper expert witness so long as the testimony offered may assist the jury (MCL 750.520b; MSA 28.788[2]; MRE 702).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Donald J. McLennan,*

Prosecuting Attorney, and *Michael A. Nickerson,* Assistant Attorney General, for the people in *Smith.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Michael H. Dzialowski,* Assistant Prosecuting Attorney, for the people in *Mays.*

State Appellate Defender (by *Derrick A. Carter*) for defendant Smith.

*Milton J. Marovich, P.C.,* for defendant Mays.

Riley, J. The common question in these prosecutions for first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2), is whether the trial courts erred so as to require reversal in allowing the examining physicians to testify that the complainants had been sexually assaulted. In *Mays,* we find the foundation sufficient; however, because the foundation for the testimony was inadequate in *Smith,* the testimony was improperly admitted. Therefore, we reverse the decisions of the Court of Appeals in both cases.

### FACTS AND PROCEDURAL HISTORY

### *People v Smith*

Defendant was convicted by a jury, along with his codefendant, of first-degree criminal sexual conduct, MCL 750.520b(1)(d)(ii); MSA 28.788(2)(1)(d)(ii) (sexual penetration while aided or abetted by another, using force or coercion to accomplish the penetration). The complainant testified that she had gone for a ride with defendant and the codefendant on the evening of February 21, 1981. The vehicle became stuck and defendant

made sexual advances. She cried and asked him to stop. According to complainant, the codefendant held her down while defendant engaged in oral sex with her. Thereafter, both men engaged in sexual intercourse with her.

At trial, defendant testified that the sexual activities were consensual.[1]

The testimony which is the subject of this appeal was given by Dr. Clair McDougall, the physician who examined the complainant shortly after the incident. Dr. McDougall, an obstetrician/gynecologist, also happened to have been the complainant's physician since 1979. Dr. McDougall testified that he had conducted approximately five examinations of alleged sexual assault victims per year over the past ten years. He testified that although he found no physical evidence of an assault, in his opinion complainant had been sexually assaulted.[2]

---

[1] A police officer testified that when he interviewed defendant and the codefendant the day after the incident, both denied having intercourse with the victim.

[2] *Q. [Prosecuting Attorney]:* Did you reach an opinion based upon your examination that night as to whether a sexual assault had taken place?

*A. [Dr. McDougall]:* Yes.

*Q.* Would you tell me what factors you considered in reaching your determination? Let me restate that, please. If we assume that sexual penetration took place with [complainant] that night . . .

*A.* Yes.

*[Defense Counsel]:* Your Honor, I am going to object to the form of the Prosecutor's question. I think we would very much like to hear . . .

*The Court:* Yeah. Was there any evidence of sexual penetration, I think that's a proper question.

*[Prosecuting Attorney]:* Well . . .

*[Defense Counsel]:* Your Honor, again, I would object. He has asked the Doctor if he reached an opinion and the Doctor has stated yes.

*The Court:* What's the opinion?

*[Prosecuting Attorney]:* All right.

*Q. [Prosecuting Attorney]:* What was your opinion, Doctor?

*A. [Dr. McDougall]:* My opinion was that she was assaulted.

This opinion was based on the complainant's emotional state, described by Dr. McDougall as "agitated, extremely nervous" and "shaking," and her "history as she described it . . . ."

On the following day of trial, defendant objected to the testimony and sought a curative instruction, claiming error on the basis of *People v McGillen #2,* 392 Mich 278; 220 NW2d 689 (1974). The trial court refused to give a curative instruction,[3] relying on *People v Gerald Wells,* 102 Mich App 558; 302 NW2d 232 (1980), lv den 417 Mich 916 (1983). As in *Gerald Wells,* the trial court found *McGillen #2* factually distinguishable. Following the Court of Appeals affirmance of the trial court's reasoning and decision, *People v Smith, People v Buse,* unpublished opinion per curiam of the Court of Appeals, decided June 20, 1984 (Docket Nos. 66807, 66808), we granted defendant's application for leave to appeal. 422 Mich 936 (1985).

### *People v Mays*

Following a jury trial, defendant Mays was convicted of two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(e); MSA 28.788(2)(1)(e) (sexual penetration while armed with a weapon).[4] The complainant testified that defendant accosted her at gunpoint in the parking lot of her apartment complex in the early morning hours of De-

---

*Q.* What did you base that opinion on?

*A.* History, the—well, history and emotional state of the patient—of the patient.

*Q.* Are you talking about her—her history as you knew it?

*A.* Her history as she described it to me.

*Q.* And you weighed that together with her emotional state?

*A.* Yes.

[3] The trial court gave the standard instruction on expert opinion testimony (CJI 5:2:11).

[4] Defendant was also convicted of two counts of armed robbery.

cember 5, 1981. Defendant ordered complainant into her car and she drove to a cemetery, at which time he forced vaginal and oral intercourse upon her. Defendant then ordered her into the trunk of the car and drove to another location where, again at gunpoint, he forced her to have vaginal and rectal intercourse.

Defendant testified that his sexual conduct with complainant was consensual.

Dr. Michael Peikert examined the victim, in his capacity as an emergency department physician, shortly after the incident. Dr. Peikert estimated that he had examined approximately fifty alleged victims of sexual assault. The doctor testified that complainant told him that a man with a gun had slapped her and forced her to have oral, rectal, and genital sex. He further testified that she appeared to have been crying, but was basically calm. Finally, his examination revealed a red mark on her face and she had some small abrasions at the entrance of her vagina.

The prosecutor then asked:

> *Q. [Prosecuting Attorney]*: All right. Using your background, your education, your experience, her demeanor, her clothing, her attitude, and what you saw in your examination, all of the things that you know about this person, using all of your experience, did you form an opinion as to whether or not there was sexual penetration against her will?

Citing *McGillen #2* and *People v Izzo,* 90 Mich App 727; 282 NW2d 10 (1979), lv den 407 Mich 935 (1979), defendant objected, claiming that the doctor was not qualified to give an opinion that the complainant had been penetrated against her will and that this testimony invaded the province of the jury. The trial court allowed the testimony,

relying on *Gerald Wells, supra,* and *People v LaPorte,* 103 Mich App 444; 303 NW2d 222 (1981), and distinguishing *McGillen #2* and *Izzo.*

Direct examination of the doctor continued:

> *The Court:* You can go ahead and answer that, Doctor.
>
> [*Dr. Peikert*]: Yes.
>
> *Q.* [*Prosecuting Attorney*]: Can you tell us what that opinion is?
>
> *A.* My opinion was that she had been penetrated against her will.

In a split decision, the Court of Appeals reversed:

> We hold that an opinion concerning whether a complainant was penetrated against her will must be limited to the doctor's physical examination. Testimony allegedly based on past experience with sexual assault cases and the emotional state of the patient is lacking in reliable foundation and is beyond the expertise of the physician; it should not be admitted.

Judge ALLEN dissented, citing *Gerald Wells, supra.* We granted the prosecutor's application for leave to appeal. 422 Mich 937 (1985).

### DISCUSSION

The principles governing the admissibility of expert testimony are set forth in the Michigan Rules of Evidence. The critical inquiry with regard to expert testimony is whether such testimony will aid the factfinder in making the ultimate decision in the case. Thus, MRE 702 provides:

> If the court determines that recognized scientific, technical, or other specialized knowledge will

assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The determination of when such testimony is admissible lies within the discretion of the trial court and will vary according to the area at issue and the particular facts of the case. Generally, the testimony must assist the jury in understanding the evidence or the factual issues, and the witness must have sufficient qualifications "as to make it appear that his opinion or inference will probably aid the trier in the search for truth." McCormick, Evidence (3d ed), § 13, p 33. In determining whether an expert's testimony will assist the trier of fact, the Advisory Committee Note to FRE 702 states:

> Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Ladd, Expert Testimony, 5 Van L R 414, 418 (1952).

It is further well-established that expert opinion testimony will not be excluded simply because it concerns the ultimate issue:

> Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. [MRE 704.]

As the rule itself makes clear, however, such testimony must be "otherwise admissible," thereby implicating, inter alia, the "helpfulness" requirement.[5]

The sexual assault cases in which expert testimony has been at issue illustrate the above principles. The leading case is *People v McGillen #2, supra.* There, we emphasized the "helpfulness" requirement:

> [T]he examining physician in a rape case is a proper witness *as long as his testimony may assist the jury* in their determination of the existence of either of two critical elements of the offense charged, (1) penetration itself and (2) penetration against the will of the victim. [*Id.,* p 284. Emphasis added.]

In *McGillen #2,* a statutory rape case, the examining physician's testimony was not admissible on either element. As to the second element—penetration against the will of the victim—no testimony was relevant because this was not an element of the crime of statutory rape. *Id.* Thus, such testimony would have been of no help to the jury.

Regarding the first element—penetration—we noted that the examining physician may testify to the victim's physical condition:

> In *People v Kirtdoll,* 391 Mich 370, 394-395; 217 NW2d 37 (1974) this Court stated:
> "Dr. Taver was an appropriately indorsed witness as the attending physician in a rape case. Proof of rape requires the showing of penetration. *People v Inman,* 315 Mich 456; 24 NW2d 176 (1946). And in addition, proof of rape requires the

---

[5] Other considerations pertinent to admissibility include those expressed in MRE 403, 703, and 705.

showing of use of force where the woman is past the age of consent. *Don Moran v People,* 25 Mich 356; 12 Am Rep 283 (1872). The attending physician just after the commission of the rape is normally the best witness to these facts. In fact attending physicians have even been designated as res gestae witnesses. *People v Dickinson,* 2 Mich App 646; 141 NW2d 360 (1966); *People v Kelly,* 30 Mich App 154; 186 NW2d 72 (1971); *People v Crable,* 33 Mich App 254; 189 NW2d 740 (1971).

"The physician attending the victim immediately after a rape case is in a position to testify to the victim's *condition* beyond what the record may show or beyond what is admissible under the business entry statute. Certainly the physician's posture in the case is quite different from a bookkeeper, for example, who may only be entering credits and debits in the normal course of business." (Emphasis added.) [*McGillen #2,* pp 283-284.]

For example, we opined that the doctor could have testified to whether "the complaining witness still had an intact hymen at the time of his examination. . . . if [she had] claim[ed] to have had an intact hymen prior to the alleged act." *Id.,* p 285. Apparently, she did not so claim. There was, in fact, no testimony of any physical findings of penetration. Further, under the peculiar factual situation of *McGillen #2*—i.e., the examination was not performed until over two weeks after the alleged incident, within which two week interval the victim was, by her testimony, again raped—it is doubtful, if not impossible, that the doctor could have given any meaningful opinion testimony based on the victim's physical condition. Thus, we observed:

The doctor in this case could not testify as to whether or not the prosecutrix had intercourse on the date in question. Medical science has not yet

advanced to this point under these circumstances. [*McGillen #2,* p 285.]

Nonetheless, the doctor in *McGillen #2* testified that his "findings" were "consistent [with] the history" given by the victim. *Id.,* p 283. Considering the lack of any objective findings, this conclusion was nothing more than the doctor's opinion that the victim had told the truth.

When read in light of the applicable principles governing expert testimony, the *McGillen #2* doctor's testimony was objectionable because his opinion was based solely on what the victim had told him. In the absence of any evidence qualifying him as an expert in assessing credibility, his opinion lacked a reliable foundation. Since the jury was in just as good a position to evaluate the victim's testimony as he, the doctor's opinion was superfluous.

Subsequent to *McGillen #2,* the Court of Appeals decided several cases in which the admissibility of examining physicians' testimony was challenged. Some panels found such testimony inadmissible, relying on *McGillen #2.*[6] Others, however, on which the prosecutors here rely, distinguished *McGillen #2,* and affirmed the trial courts' decisions to admit the testimony.

The latter line of cases began with *People v Gerald Wells, supra.* There the Court of Appeals characterized the physician's testimony as follows:

> In the present case, the defendant admitted having sexual intercourse with the complainant. Therefore, the only element to which the examining physician could testify is penetration against

---

[6] In *People v Fenner,* 136 Mich App 45; 356 NW2d 1 (1984), lv den 420 Mich 852 (1984), the doctor testified that the complainant had informed him that her uncle was the perpetrator and concluded that the complainant's physical condition was consistent with her story.

the will of the victim. This is exactly what oc-
curred. Dr. Adler testified that based upon his
physical findings in examining the victim, the
history received from the patient, the emotional
condition of the patient, and his many years of
experience and many cases of examining victims of
alleged sexual assaults, it was his opinion that this
was a legitimate case of sexual assault. [*Id.,* p 562.]

Because the doctor "did not testify that he be-
lieved that the defendant raped the complainant
at a specific time and/or place," the Court found
that *McGillen #2* did not preclude his testimony.
*Id.* Other panels have relied on the factors men-
tioned in *Gerald Wells* (physical findings, history
given by the victim, victim's emotional state, and
doctor's experience in examining alleged victims of
sexual assault) to support their decisions affirming
admissibility of the testimony.[7]

Defendant Smith argues that *Gerald Wells* is
irreconcilable with *McGillen #2,* suggesting that

[7] E.g., *People v LaPorte,* 103 Mich App 444; 303 NW2d 222 (1981),
the case involving Gerald Wells' alleged accomplice. While the Court
held that the defendant had failed to preserve the error for review, it
went on to discuss the alleged error in the examining physician's
testimony that he thought complainant was a "legitimate rape vic-
tim," *id.,* p 451, opining that the testimony was admissible. The Court
adopted the *Gerald Wells* rationale and noted the following factors of
the case which distinguished it from *McGillen #2:* penetration was
admitted, so that the legal issue was penetration against the victim's
will, the examination occurred within hours after the alleged inci-
dent, the doctor testified that he viewed with skepticism any victim's
version of an alleged rape, basing his opinion on his own observations
of the victim's physical and emotional conditions, and finally, the
physician did not state that the defendant was the perpetrator. *Id.,* p
453. In *People v Byrd,* 133 Mich App 767, 780; 350 NW2d 802 (1984),
lv den 419 Mich 960 (1984), the Court found no error in the doctor's
testimony that, in his expert opinion, on the basis of complainant's
emotional state and physical injuries, she had experienced a fairly
significant assault. In *People v Hunter,* 141 Mich App 225, 233-234;
367 NW2d 70 (1985) (leave to appeal held in abeyance pending
decision in the instant case), the Court, while not citing *Gerald Wells,*
affirmed admission of a doctor's testimony that the complainant's
physical injuries were consistent with forcible vaginal entry and
found no violation of *McGillen #2.*

the following language of *McGillen #2* sets forth
certain inflexible rules regarding examining physi-
cians' testimony in all sexual assault cases.

> An expert opinion[1] of the examining physician
> on this element [penetration against the victim's
> will] is then generally beyond the scope of admissi-
> ble expert testimony.
>
> * * *
>
> It is also noted that in no event is the doctor
> permitted to lend his expert opinion testimony as
> to the crucial issue of whether or not the prosecu-
> trix was actually *raped*[3] at a specific time and
> place.

---

[1] It would be only the doctor's opinion that would be inadmis-
sible. He could still testify as to any physical conditions (i.e.,
bruises, bleeding, lacerations, etc.) which he found upon exami-
nation. [*Id.,* p 284.]

[3] Rape is a crime, defined by law, with specific elements
comprising the offense. Most crucial of them is lack of consent of
the victim. To this element the doctor could not testify. [Emphasis
in original. *Id.,* p 285.]

---

Reading the applicable language in isolation,
*McGillen #2* seems to do just that, as Justice
COLEMAN noted in her dissent, p 288. However, we
would emphasize that the quoted language is dicta,
as the doctor there did *not* testify that the defen-
dant had raped the victim at a specific time or
place, or that she did not consent. Further, to the
extent that this language suggests that an opinion
regarding an ultimate issue is never permitted,
such a blanket prohibition would clearly conflict
with MRE 704.[8]

We are persuaded, therefore, that *Gerald Wells*

---

[8] Finally, we are not persuaded by defendant Smith's argument that
the doctor's testimony should have been excluded for the reason that
it invaded the province of the jury. Wigmore explains why this is not
a valid reason to exclude such testimony:

> In this aspect the phrase is so misleading, as well as so
> unsound, that it should be entirely repudiated. It is a mere bit

and its progeny are consistent with the basic principles of *McGillen #2*. Decisions on admissibility must, of course, be made in the context of the particular case. The party proffering the expert's testimony must persuade the court that the expert possesses specialized knowledge which will aid the trier of fact in understanding the evidence or determining a fact in issue. MRE 702.

### SUMMARY

Having carefully reviewed the testimony in *Smith*, we agree with defendant that Dr. McDougall's testimony should not have been admitted. His opinion that the complainant had been sexually assaulted was based, not on any findings within the realm of his medical capabilities or expertise as an obstetrician/gynecologist, but, rather, on the emotional state of, and the history given by, the complainant.[9]

of empty rhetoric. There is no such reason for the rule, because the witness, in expressing his opinion, is not attempting to "usurp" the jury's function; nor could if he desired. He is *not* attempting it, because his error (if it were one) consists merely in offering to the jury a piece of testimony which ought not to go there; and he *could not* usurp it if he would, because the jury may still reject his opinion and accept some other view, and no legal power, not even the judge's order, can compel them to accept the witness' opinion against their own. That there is no hidden danger of "usurpation" lurking here, and no need of invoking sentiment to repel it, will be clearly seen if we remember that the improper evidence is equally inadmissible before a judge sitting without a jury. Whatever the organization of the tribunal, it is not to waste its time in listening to superfluous and cumbersome testimony. [7 Wigmore, Evidence (Chadbourn rev), § 1920. Emphasis in original.]

[9] That Dr. McDougall's testimony was based largely on what the complainant had told him was revealed on cross-examination:

   *Q. [Defense Counsel]:* . . . Your conclusion of sexual assault was just, as you said, [complainant] said, "I have been raped," is that . . .
   *A. [Dr. McDougall]:* Yes.
   *Q. [Defense Counsel]:* . . . essentially it?

Like *McGillen #2,* this opinion was, in effect, an assessment of the victim's credibility. To the extent that the doctor's opinion was based on the complainant's emotional state, the record does not support a finding that Dr. McDougall possessed specialized knowledge which would enable him to draw inferences from that evidence. The jury had heard this evidence as well as the victim's testimony, and Dr. McDougall's opinion was merely an inadmissible lay witness' opinion on the believability of the complainant's story. MRE 701.[10] His opinion that the victim had been sexually assaulted was, therefore, erroneously admitted. Further, because the defense was consent, credibility of the victim and defendant was the crucial issue. For this reason, the error was such that reversal is required.

Finally, we note that defendant *Smith* has also claimed that the Court of Appeals erred in affirming the trial court's refusal to instruct that consent is an affirmative defense to the charge of criminal sexual conduct. However, inasmuch as we are in accord with the Court of Appeals disposition of this issue, it is unnecessary, in light of our reversal, that we address it here.

*Mays* presents a closer question. In that case, the doctor testified that the physical examination revealed abrasions at the entrance of the complainant's vagina, in addition to expressing his opinion that she had been penetrated against her will. The Court of Appeals found that "an opinion concerning whether a complainant was penetrated against her will [could be based on] the doctor's

---

A similar factual situation in *State v Castore,* — RI —; 435 A2d 321 (1981), resulted in vacation of the defendant's conviction.

[10] Dr. McDougall, who had been the complainant's gynecologist for two years before the alleged assault, was properly permitted to testify to the complainant's objectively manifested emotional state.

physical examination." However, since the prosecutor had suggested that the doctor could consider *other* factors (i.e., his "past experience with sexual assault cases and the emotional state of the patient," *id.*) in formulating an opinion, the Court would have the opinion disregarded entirely.

With this conclusion we do not agree. Although opinion testimony based on the doctor's "past experience" and his observance of the "emotional state of the patient" did not in this case support an expert opinion standing alone, it does not follow that the doctor's testimony regarding forceful penetration based on his observation of the physical evidence was inadmissible.

Although the question was inartfully phrased, particularly in light of the fact that "penetration against the will of the victim" is not an element of the offense of criminal sexual conduct,[11] we cannot

---

[11] Prior to 1975, the offense of "rape" was defined as follows:

Any person who shall ravish and carnally know any female of the age of 16 years, or more, by force and *against her will,* or who shall unlawfully and carnally know and abuse any female under the full age of 16 years, shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years, or if such person was at the time of the said offense a sexually delinquent person, may be punishable by imprisonment in the state prison for an indeterminate term, the minimum of which shall be 1 day and the maximum of which shall be life. Such carnal knowledge shall be deemed complete upon proof of any sexual penetration however slight. [MCL 750.520; MSA 28.788. Emphasis added.]

This statute was repealed by 1974 PA 266, § 3, which redefined the offense as criminal sexual conduct of four degrees of seriousness. MCL 750.520b-750.520e; MSA 28.788(2)-28.788(5). First-degree sexual conduct is defined as sexual penetration with another person accompanied by any one of some eight circumstances. MCL 750.520b(1)(a)-(h); MSA 28.788(2)(1)(a)-(h). Under the old law, the prosecution was required to establish that the connection was had by force and against the will of the complainant, and that there was the utmost reluctance and resistance, or that her will was overcome by fear of the defendant so that she dared not resist. *Don Moran v People,* 25 Mich 356 (1872). The new statute, in contrast, provides

agree that error resulted. The doctor's opinion was grounded upon objective evidence;[12] cross-examination was available, and was used, to expose its true basis. The use of force or coercion is relevant in this case in light of defendant's claim that the acts were consensual; therefore, the expert's opinion on forcible penetration was proper so long as it was based upon a proper factual foundation. Accordingly, we reverse the decision of the Court of Appeals and reinstate the jury's verdict.[13]

CONCLUSION

Thus, we reverse the Court of Appeals affirmance of defendant Smith's conviction, and we remand for proceedings consistent with this opinion.

We reverse the Court of Appeals decision as to defendant Mays and reinstate defendant's convictions.

WILLIAMS, C.J., and LEVIN, BRICKLEY, CAVANAGH, BOYLE, and ARCHER, JJ., concurred with RILEY, J.

---

that "[a] victim need not resist the actor . . . ." MCL 750.520i; MSA 28.788(9).

[12] We need not decide the extent to which MRE 703 would allow expert testimony based upon facts or data not "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject . . . ." FRE 703. We need only say that, in this case, the abrasions at the entrance to the victim's vagina provided an adequate basis for Dr. Peikert's opinion.

[13] Our decision today is made in the context of the particular cases before us, i.e., both cases concerned admissibility of the doctors' opinions which were based on examination of the alleged victims shortly after the incidents. We express no opinion on, e.g., the admissibility of expert psychiatric testimony or rape trauma syndrome evidence, noting only that the rules of evidence should guide any decision on admissibility of expert testimony.