# Order

**Michigan Supreme Court**
**Lansing, Michigan**

May 15, 2020

158259

PEOPLE OF THE STATE OF MICHIGAN,
       Plaintiff-Appellee,

v

ANTHONY RAY McFARLANE, JR.,
       Defendant-Appellant.

SC: 158259
COA: 336187
Allegan CC: 14-018862-FC

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

_____/

On March 4, 2020, the Court heard oral argument on the application for leave to appeal the June 19, 2018 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

MARKMAN, J. (*concurring*).

The Court of Appeals concluded that the trial court plainly erred when, in a trial involving alleged child abuse, it allowed the prosecutor's expert witness to testify regarding the diagnosis of "abusive head trauma"-- a medical diagnosis accepted by the American Academy of Pediatrics-- and "definite pediatric physical abuse," a term the expert used interchangeably with "abusive head trauma." *People v McFarlane*, 325 Mich App 507, 517, 520 (2018). In the judgment of the Court of Appeals, this diagnosis "[went] too far" by "implicat[ing] the defendant's intent or knowledge when performing the act that caused the head trauma." *Id*. at 523. That said, the Court of Appeals affirmed defendant's conviction because the error did not affect his substantial rights. *Id*. at 526-527. While I concur with this Court's order denying leave to appeal because the Court of Appeals, in my judgment, reached the correct result, I write separately to express why there was no "error" in the first place concerning the admission of the expert's testimony.

Recently, this Court explained that "an examining physician, if qualified by experience and training relative to treatment of sexual assault complainants, can opine with respect to whether a complainant ha[s] been sexually assaulted when the opinion is based on physical findings and the complainant's medical history." *People v Thorpe*, 504 Mich 230, 255 (2019), citing *People v Smith*, 425 Mich 98, 110-112 (1986) (emphasis omitted). In *People v Harbison*, which was decided as a companion case to *Thorpe*, the prosecutor's expert diagnosed the complainant with " 'probable pediatric sexual abuse.' " *Thorpe*, 425 Mich at 235. We held that this diagnosis was inadmissible at trial because it was *not* based on physical findings, but rather on "what the victim . . . told the physician." *Id*. at 261-262 (quotation marks and citation omitted). Thus, in *Harbison*,

the trial court plainly erred by admitting the diagnosis "because such testimony vouches for the complainant's veracity and improperly interferes with the role of the jury." *Id*. at 235. However, what was pointedly *not* asserted was that mere reference to a medical condition described as being the product of "*abuse*" "invades the province of the jury."

In the instant case, unlike in *Harbison*, the expert's diagnosis of "abusive head trauma," or "definite pediatric physical abuse," was in accord with *Harbison* because she based her findings entirely on a personal physical examination of the infant, as well as the infant's full medical history. Specifically, she testified that she had conducted a thorough physical examination; reviewed the medical history, including X-rays, CT scans, MRIs, and lab reports; and had ordered further testing. After consideration of all the clinical facts, the expert provided what is widely accepted within the medical community to constitute a proper and legitimate medical diagnosis. She did not vouch for the veracity of the infant victim, she did not state or otherwise suggest who specifically caused the injuries, and she acknowledged that she could not opine as to precisely how the victim sustained her injuries. And as a result, the expert did not pass judgment on defendant's guilt or otherwise invade the province of the jury in any way similar to the expert in *Harbison*. Thus, I do not believe the trial court "plainly erred," or erred at all, by allowing the expert to testify concerning the diagnosis of medical harm suffered by the victim.

The Court's denial of leave is ambiguous, and therein lies the problem. If it is the majority's intention to adopt the Court of Appeals' analysis that the trial court *erred* in some manner by permitting the expert testimony, it might have been more prudent to have clearly stated so; in my judgment, the analysis of the Court of Appeals has no provenance in either *Harbison* or any other decision of this Court. However, if it is the majority's intention to conclude only that the Court of Appeals did not err by finding that the "substantial rights" of the defendant were unaffected by the expert's testimony, whether that testimony was proper or not, I again question whether it would have been more prudent to have stated this intention clearly, for the Court of Appeals' alteration of the law in a published opinion is of consequence for the prosecution of child abuse and "battered infant" cases. In agreement with the Prosecuting Attorneys Association of Michigan, I believe the Court of Appeals has introduced confusion into the realm of abusive head trauma cases by imposing upon expert witnesses seeking to testify in support of this diagnosis the obligation either to obscure a medically accurate description of the victim's condition or to run afoul of the standard of the Court of Appeals.

ZAHRA, J., joins the statement of MARKMAN, J.

CAVANAGH, J. (*concurring*).

I agree with the Court of Appeals that expert testimony was erroneously admitted in this case, that the error was plain, and that the error did not affect the outcome of the trial. *People v McFarlane*, 325 Mich App 507, 518-527 (2018). I write separately to

explain why the Court of Appeals decision, while not controlled by our decision in the companion cases of *People v Thorpe* and *People v Harbison*, 504 Mich 230 (2019), is nevertheless consistent with that decision and why this Court should deny leave rather than issue an opinion affirming the Court of Appeals.

The trial court in this case erred by allowing a prosecution expert to opine to the jury that the complainant had suffered "abusive head trauma" and "definite pediatric physical abuse." In *People v Smith*, 425 Mich 98, 115 (1986), we held that a physician could testify as to the results of a physical examination of a complainant in a sexual assault case, but that any opinion must be "based upon a proper factual foundation." That foundation was lacking in *Smith* because the expert's "opinion that the complainant had been sexually assaulted was based, not on any findings within the realm of his medical capabilities or expertise as an obstetrician/gynecologist, but, rather, on the emotional state of, and the history given by, the complainant." *Id*. at 112. In *Harbison*, *Thorpe*'s companion case, we held that "an examining physician, if qualified by experience and training relative to treatment of sexual assault complainants, can opine with respect to whether a complainant ha[s] been sexually assaulted when the opinion is based on physical findings *and* the complainant's medical history." *Thorpe*, 504 Mich at 255. In both *Smith* and *Harbison*, physicians testifying as expert witnesses had opined on whether the complainant had been sexually assaulted based on the physician's opinions of the complainant's veracity, rather than physical evidence, which amounted to improper vouching for the complainant. *Smith*, 425 Mich at 112-113; *Thorpe*, 504 Mich at 262-263.

I agree with the Court of Appeals that, at least under *Smith* and *Harbison*, a physician may opine on whether physical injuries are the result of human agency as long as that opinion is grounded in the physical findings of the examination.[1] But the terms "abusive head trauma" and "definite pediatric physical abuse" carry connotations greater than mere human agency. As the Court of Appeals explained:

> The ordinary understanding of the term "abuse"—as opposed to neglect or carelessness—implies a level of willfulness and moral culpability that implicates the defendant's intent or knowledge when performing the act that caused the head trauma. [*McFarlane*, 325 Mich App at 523.]

More than merely providing an opinion from which the jury could infer that the defendant possessed the requisite intent, the expert explicitly connected the terms to the defendant's state of mind:

> She repeatedly told the jury that KM's injuries were "caused by definite pediatric physical abuse," and she stated that "we know that abusive head

---

[1] Any such opinion would of course be subject to challenge under MRE 702 and *Daubert v Merrell Dow Pharm, Inc*, 509 US 579 (1993).

trauma" causes these injuries because people confess to hospital staff and investigators or other family members after inflicting the injuries. She also agreed that KM had suffered previous abuse even though she was only nine weeks old. She further told the prosecutor that she was correct when the prosecutor noted that Brown looked at the totality of the circumstances before concluding that this case involved "child abuse." [*Id*. at 524.]

The testimony as a whole went beyond the "proper factual foundation" required by *Smith* and was not based solely on the "physical findings" as required by *Harbison*.

Our decision in *Harbison* does not broadly sanction, without limitation, all expert testimony that a victim was abused as long as the expert's opinion is based on physical findings and the complainant's medical history. The question we decided in *Harbison* was whether the expert improperly vouched for a witness. The question the Court of Appeals decided in this case was whether the diagnostic labels "abusive head trauma" and "definite pediatric physical abuse" invade the province of the jury. *McFarlane*, 325 Mich App at 523. The Court of Appeals was correct that these diagnoses imply a level of willfulness and culpability that the jury alone is tasked to determine. *Id*. While the Court of Appeals explained that an expert opinion that trauma was inflicted or not accidental would be permissible if based on objective medical evidence, the challenged terminology "goes too far." *Id*.

The terminology at issue here has the potential to confuse medical diagnosis with legal determination and is more prejudicial than probative in violation of MRE 403. The fact that the medical community has decided to use certain terminology for a diagnosis does not relieve the trial court of its obligation to ensure that overly prejudicial testimony is not admitted. Even the Prosecuting Attorneys Association of Michigan admits that this terminology presents a risk of prejudice and juror confusion, offering a proposed jury instruction to lessen this risk. In this child abuse trial, where the diagnoses at issue suggested that the expert could and did determine that the defendant acted knowingly or intentionally and was criminally responsible for child abuse, the expert's testimony was admitted in error.

Further, I agree with the Court of Appeals that the error here was plain. *People v Carines*, 460 Mich 750, 763 (1999). As we said in *Harbison*, "[o]ur decision in *Smith* was unanimous and has never been called into question. *Smith* provides a very straightforward bright-line test that trial courts can readily observe." *Thorpe*, 504 Mich at 262. But I also agree with the Court of Appeals that the error did not "affect[] the outcome of the lower court proceedings," *Carines*, 460 Mich at 763, for the reasons the court discussed, *McFarlane*, 325 Mich App at 525-527.

I appreciate Justice MARKMAN's concern that our resolution of this case could create ambiguity. If the Court of Appeals had erred on its substantive determination as to the admissibility of the expert testimony, I agree that this Court's role would have been to clarify the state of the law. But, as explained earlier, I believe the Court of Appeals

opinion is correct. Because the opinion below is published, it has precedential effect. MCR 7.215(C)(2). Consequently, I do not see an ambiguity that needs to be clarified.

McCORMACK, C.J., joins the statement of CAVANAGH, J.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

May 15, 2020



Clerk

t0512