*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
October 29, 2020

v

JONATHAN ERNEST MANWELL,

Defendant-Appellant.

No. 333916
Macomb Circuit Court
LC No. 2015-002139-FC

ON REMAND

Before: JANSEN, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

This case is before us on remand from our Supreme Court to reconsider our holdings in parts III and IV of *People v Manwell*, unpublished per curiam opinion of the Court of Appeals, issued February, 22, 2018 (Docket No. 333916), regarding the testimony of Children's Protective Services (CPS) worker, Jennifer Raleigh, and the testimony of Detective John Newman in light of the consolidated cases of *People v Thorpe* and *People v Harbison*, 504 Mich 230; 934 NW2d 693 (2019). We again affirm.

The underlying facts of this case are set out in our prior opinion, *Manwell*, *supra*, and need not be repeated here. Suffice it to say, defendant was convicted of sexually abusing his daughter, DM, and this Court affirmed defendant's convictions. In affirming, this Court found that challenged trial testimony of both CPS worker Jennifer Raleigh and Detective John Newman was admissible lay opinion testimony under MRE 701, that the testimony did not constitute improper vouching for DM's credibility, and that defendant failed to establish plain error affecting his substantial rights. *Manwell*, unpub op at 5-6.

In *Thorpe*, 504 Mich at 236, the defendant was accused of inappropriately touching his girlfriend's daughter. Thomas Cottrell testified as an expert witness in the area of child sexual abuse and disclosure. *Id*. at 239. Cottrell "testified to the broad range of reactions of children who are abused, the cost/benefit analysis children make in deciding whether to disclose abuse, and some of the reasons children may delay disclosure." *Id*. On redirect examination, the prosecutor asked

Cottrell the percentage of children reporting abuse whose reports are fabricated. The defendant objected, but the trial court overruled the objection on the ground that defendant had opened the door by raising the issue of false reports on cross-examination. *Id*. at 239-240. Cottrell testified that it was "extremely rare" for a child to lie about a sexual assault. He stated that children who lie do so "with a purpose" such as bringing attention to domestic violence against the other parent. *Id*. at 240.

Reviewing the admission of Cottrell's testimony as a preserved error, the Supreme Court referenced its prior decision in *People v Smith*, 425 Mich 98; 387 NW2d 814 (1986), and stated:

> Citing MRE 704, we stated that "[i]t is . . . well-established that expert opinion testimony will not be excluded simply because it concerns the ultimate issue[.]" Yet, we acknowledged that an examining physician cannot give an opinion on whether a complainant had been sexually assaulted if the "conclusion [is] nothing more than the doctor's opinion that the victim had told the truth." An examining physician's opinion is objectionable when it is solely based "on what the victim . . . told" the physician. Such testimony is not permissible because a "jury [is] in just as good a position to evaluate the victim's testimony as" the doctor. Nonetheless, an examining physician, if qualified by experience and training relative to treatment of sexual assault complainants, can opine with respect to whether a complainant had been sexually assaulted when the opinion is based on physical findings and the complainant's medical history. [*Thorpe*, 504 Mich at 255, quoting *Smith*, 425 Mich at 106, 109-112.]

The Court concluded that "it [wa]s more probable than not that a different outcome would have resulted without Cottrell's testimony that children lie about sexual abuse 2% to 4% of the time." *Thorpe*, 504 Mich at 259. The Court remarked that the trial "was a true credibility contest" in which there was "no physical evidence, there were no witnesses to the alleged assaults, and there were no inculpatory statements." *Id*. at 260. Consequently, "the improperly admitted testimony wherein Cottrell vouched for [the complainant's] credibility likely affected the jury's ultimate decision." *Id*. at 260. The Court thus reversed the defendant's convictions and remanded for a new trial.

In the companion case, *People v Harbison*, the defendant occasionally babysat his nearly nine-year-old niece. *Id*. at 242. The child was removed from her home and placed in foster care. *Id*. at 242. After her removal, the child disclosed incidents of abuse to a foster parent, a caseworker, and a pediatrician. *Id*. at 242-243. At trial, the child testified regarding numerous incidents of penetrative and nonpenetrative sexual assaults by the defendant. *Id*. at 243. Dr. Debra Simms, an expert in the field of "child sexual abuse diagnostics," testified that she diagnosed the child with "probable pediatric sexual abuse." Her diagnosis was based on the child's oral history and not on any physical findings in the physical examination. *Id*. at 244-247.

The Court reviewed the *Harbison* claim of error under the plain-error standard applicable to unpreserved claims. The Court concluded that "Dr. Simms's expert opinion that TH suffered 'probable pediatric sexual abuse' is contrary to this Court's unanimous decision in *Smith*." *Id*. at 260-261. The Court held that Dr. Simms's candid acknowledgment that her physical examination revealed no evidence of assault meant that her conclusion that the child suffered "probable

pediatric sexual abuse" was based on her opinion that the victim gave a "clear, consistent, detailed and descriptive" report of the assaults. *Id*. at 261-262. Her testimony therefore violated the holding in *Smith*, "that an examining physician cannot give an opinion on whether a complainant had been sexually assaulted if the 'conclusion [is] nothing more than the doctor's opinion that the victim had told the truth.' " *Id*. at 262, quoting *Smith*, 425 Mich at 109. The testimony qualified as plain error because Dr. Simms vouched for the victim's testimony in violation of the "straightforward bright-line test" as stated in *Smith*. *Thorpe*, 504 Mich at 262. The Court also concluded that Dr. Simms's testimony affected the defendant's substantial rights, principally because Dr. Simms "clearly vouched for [the complainant's] credibility. *Id*. The Court quoted *People v Beckley*, 434 Mich 691, 727-728, 729; 456 NW2d 391 (1990) (opinion by BRICKLEY, J.), in which the Court stated:

> [A]ny testimony about the truthfulness of this victim's allegations against the defendant would be improper because its underlying purpose would be to enhance the credibility of the witness. To hold otherwise would allow the expert to be seen not only as possessing specialized knowledge in terms of behavioral characteristics generally associated with the class of victims, but to possess some specialized knowledge for discerning the truth. [*Thorpe*, 504 Mich at 263.]

The Court reversed the defendant's convictions in *Harbison* and remanded for a new trial. *Id*. at 266.

In this case, as this Court determined in its original opinion, defendant did not preserve the claims of error raised and addressed in parts III and IV of this Court's original opinion. Therefore, those claims are reviewed under the plain-error framework whereby defendant must show a plain error that affected his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). A plain error is one that is "clear or obvious." *Id*. at 763. A clear or obvious error is "one that is not 'subject to reasonable dispute.' " *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018) (citation omitted). An error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *Carines*, 460 Mich at 763. Further, a reviewing court should reverse "only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Thorpe*, 504 Mich at 252-253.

We find no such error here. We first note that nothing in *Thorpe* affects this Court's prior conclusion that Raleigh's and Newman's testimony was not de facto expert testimony requiring conformity to the requirements of MRE 702. Addressing the challenged testimony, defense counsel questioned Newman about defendant's and DM's body language during their respective police interviews. On redirect, the prosecutor questioned Newman about the specific differences between defendant and DM's interview body language and behavior. Newman testified that avoiding eye contact was typical of victims and that abuse victims sometimes "feel ashamed." When asked what inference he made from DM's lack of eye contact with him, he replied, "[t]hat she was confused and she was ashamed." He also stated that DM said that defendant was "her buddy" and she did not want to get him in trouble. Newman's testimony did not express an opinion regarding DM's truthfulness or the veracity of her allegations. The only inference that Newman drew from DM's avoidance of eye contact and indication of shame was that she was confused and felt ashamed. He did not opine that confusion and shame were indicia of truthfulness, or even that

they were consistent with truthfulness. Indeed, shame and confusion could be consistent with either truthful or untruthful accusations.

Raleigh testified that victims who had been repeatedly assaulted usually have difficulty specifying how many assaults occurred. She also stated that it was not uncommon for a child victim to "cling to the abuser" and "want more attention from" the abuser. This testimony is not comparable to Cottrell's testimony in *Thorpe* that children rarely lied about a sexual assault, and those who do are usually motivated by a hope to obtain a benefit. Cottrell's testimony was tantamount to an affirmation that the complainant was truthful. Raleigh's testimony indicated that two characteristics—inability to specify frequency of recurring assaults and desire for attention from the alleged abuser—are not uncommon in child sexual abuse cases. The focus of her testimony involved characteristics of sexual abuse victims *generally*, not the veracity of DM's allegations or a likelihood that DM actually suffered abuse. Unlike in *Thorpe*, Raleigh did not offer a statistical percentage of victims who testify truthfully or falsely. Raleigh's testimony is also distinguishable from Dr. Simms's testimony in *Harbison* because she never opined that DM was truthful or offered a diagnostic opinion of the likelihood of abuse. We therefore conclude that *Thorpe* and *Harbison* do not affect the analysis in Part III of this Court's original opinion.

Part IV of this Court's opinion addressed defendant's argument that Raleigh and Newman improperly bolstered DM's credibility. We previously determined that Newman's testimony that DM appeared to be ashamed and confused was not a pronouncement on her credibility. Nothing in *Thorpe/Harbison* alters this conclusion.

We also previously concluded that "Raleigh's testimony that DM's demeanor and posture during her interview was typical of victims did not constitute vouching for DM's credibility because Raleigh did not associate DM's demeanor and behavior with credibility." *Manwell*, *supra*, at 8. There is nothing in *Thorpe/Harbison* that requires a different finding. Raleigh did not state that she found DM credible, or even that she substantiated the allegations of abuse. And, any potential prejudice of Raleigh's challenged testimony derived from the potential for a jury to infer that Raleigh must have believed that DM was abused because the case had proceeded to trial. The Court in *Thorpe/Harbison* did not address this type of inference. Further, to the extent that Raleigh's testimony created a risk that the jury might make that inference, defendant's substantial rights were protected by defense counsel's cross-examination of Raleigh, whereby she conceded that she did not know if DM's allegations were truthful, and by the trial court's jury instructions on the presumption of innocence and that "[t]he fact that the Defendant is charged with a crime and is on trial is not evidence."

The remainder of Raleigh's testimony that defendant challenges on appeal involved testimony either elicited by defense counsel or permissible testimony concerning characteristics of victims of sexual abuse. For example, it was the defense theory that DM's inability to specify the number of incidents of sexual abuse supported its contention that DM was fabricating the allegations, and that DM's continued close association with defendant refuted her claim that defendant was sexually abusing her. *Thorpe* does not affect this Court's conclusion that defendant cannot claim relief on the basis of testimony that defense counsel elicited from witnesses. Moreover, the prosecutor was permitted to respond to specific defense allegations by introducing evidence that these behaviors were not inconsistent with that of an actual victim of sexual abuse. Raleigh's testimony about victims' difficulty in quantifying the frequency of abuse did not bolster

DM's credibility, but refuted the suggestion that this difficulty indicated fabrication. Importantly, Raleigh did not state or imply that she made any observation or conclusion that validated DM's allegations as truthful. Raleigh did not state that DM was credible because she sat with her head lowered and had difficulty speaking. She merely stated that these behaviors are typical in children reporting abuse. Likewise, her testimony about victims' devotion to their abusers refuted an inference of fabrication without vouching for DM's truthfulness.

In sum, neither Newman's nor Raleigh's testimony run afoul of the principles set forth in *Thorne/Harbison*. Defendant has thus failed to establish plain error affecting his substantial rights.

Affirmed.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro