*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
July 20, 2023

v

No. 358070
Berrien Circuit Court
LC No. 2019-016064-FC

MICHAEL JAMES DUNIFIN,

Defendant-Appellant.

Before: SHAPIRO, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Defendant, Michael James Dunifin, appeals as of right his convictions of four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b); three counts of second-degree criminal sexual conduct (CSC-II), MCL 750520c(2)(b); one count of accosting a child for immoral purposes, MCL 750.145a; and one count of assault with intent to commit criminal sexual conduct involving penetration, MCL 750.520g(1). The trial court sentenced defendant to serve 25 to 45 years' imprisonment for each of the four counts of CSC-I, 71 months' to 15 years' imprisonment for each of the three counts of CSC-II, 23 months' to 4 years' imprisonment for accosting a child for immoral purposes, and 38 months' to 10 years' imprisonment for assault with intent to commit criminal sexual conduct involving penetration. For the reasons set forth in this opinion, we affirm defendant's convictions.

## I. FACTUAL BACKGROUND

After defendant's child, MD, was caught searching for child pornography and improperly touching children on a school bus, MD made allegations of sexual assault by defendant in therapy. MD's mother contacted Children's Protective Services and had all three of defendant's children—LD, MD, and AD—taken to the Children's Advocacy Center for initial therapy intake. The three children disclosed that defendant had sexually abused them as young children. MD, who was 14 years old at the time of trial, testified that defendant sexually abused him from the ages of five to eight. On weekends when MD and his siblings visited defendant, defendant touched MD's penis and buttocks. Defendant also put his penis inside MD's mouth. MD testified that defendant took

nude photos of MD and showed him videos of defendant molesting other children. Additionally, MD witnessed defendant rape AD. MD saw AD bleed from her vagina during these encounters.

LD, who was 13 years old at trial, testified that when he was three years old, defendant put his penis in front of LD's face and told him to suck it. AD, who was 17 years old at trial, testified that defendant raped her from the ages of five to nine. She testified that defendant had raped her, touched her vagina, and threatened to kill her mother and family if she ever spoke about it. She testified that, on the last occasion that he raped her, he also touched her vagina with his hands, and groped her breasts under her clothing. AD testified that when defendant raped her, she often bled from her vagina. AD said that defendant choked her when she complained during these encounters and that defendant stated that this is how a father loves his children.

Two adult other-acts witnesses testified that, when they were each approximately ten years old, defendant rubbed their genitals under their clothing. The prosecution also presented testimony that defendant searched for incestuous and child sexually abusive material on his computer, such as matters of "naughty incest daughters" and "father-daughter incest." The prosecution presented testimony from Brooke Rospierski, a forensic interviewer at the Children's Advocacy Center, who testified as an expert in forensic interviewing and childhood development as it pertained to sexual abuse and disclosure. Rospierski explained the forensic-interview protocol and discussed how the interviewer establishes the interviewee's competency by discussing the difference between truths and lies with interview subjects. Alyssa Pliml, a sexual-assault nurse examiner (SANE), testified as an expert in sexual-assault examinations. Pliml explained the process of a SANE exam, noting that the process includes an invasive examination of the child's genitals. She testified that SANE examinations of MD and AD revealed no physical evidence of sexual abuse. At the end of trial, a jury found defendant guilty of all charges. Defendant now appeals.

## II. OTHER-ACTS EVIDENCE UNDER MRE 404(b)

Defendant argues that the trial court committed an abuse of discretion under MRE 404(b) by admitting evidence that defendant searched on his computer for incestuous pornography and child sexually abusive material. Defendant contends that this evidence should have been excluded as inadmissible other-acts evidence under MRE 404(b). "The decision whether to admit evidence falls within a trial court's discretion and will be reversed only when there is an abuse of that discretion." *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). A trial court abuses its discretion if its decision "falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

According to MRE 404(b)(1):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

"MRE 404(b) governs but does not prohibit all evidence of other acts that risks th[e] character-to-conduct inference[,]" *People v Jackson*, 498 Mich 246, 259; 869 NW2d 253 (2015), and the list of proper purposes for admission is not exhaustive. See *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000); *People v Engelman*, 434 Mich 204, 212; 453 NW2d 656 (1990). "MRE 404(b) is a rule of inclusion and courts should adopt a flexible approach when ruling on the admissibility of prior bad acts evidence." *People v Hawkins*, 245 Mich App 439, 448; 628 NW2d 105 (2001).

In order to be admissible, other-acts evidence must meet the standards articulated in *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993), which states:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*Id*. at 55.]

Under the first prong, the prosecution must identify a proper, non-character purpose for admission of the evidence. *People v Denson*, 500 Mich 385, 398; 902 NW2d 306 (2017). Under the second prong, the evidence must be relevant. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. The third prong asks the trial court to weigh the probative value of the evidence against any unfair prejudice and requires the trial court to consider whether to exclude the evidence under MRE 403. *Sabin (After Remand)*, 463 Mich at 55-56. "Rule 403 does not prohibit prejudicial evidence; only evidence that is unfairly so." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998).

Here, the prosecution satisfied the first prong, which requires introduction of evidence for a proper purpose, by explaining that the evidence was being offered to establish defendant's intent. CSC-II and assault with the intent to commit CSC involving penetration have an element of intent. In this case, CSC-II involved a "person engag[ing] in sexual contact with another person" who is "under 13 years of age." MCL 750.520c. "Sexual contact" includes "the intentional touching of the victim's or actor's intimate parts" and "that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose . . . ." MCL 750.520a(q). Thus, to prove the charges of CSC-II, the prosecution had to establish that defendant touched the genitals of MD and AD for a sexual purpose. Assault with the intent to commit CSC involving penetration requires: " '(1) an assault; (2) with an improper sexual purpose or intent; (3) an intent to commit an act involving penetration; and (4) an aggravating circumstance.' " *People v Nickens*, 470 Mich 622, 627; 685 NW2d 657 (2004). Thus, to support the charge of assault with the intent to commit CSC involving penetration, the prosecution had to establish defendant's intent to commit the act.

The prosecution also satisfied the second prong, which requires that the evidence must be relevant, because defendant's purpose for touching the genitals of AD and MD was relevant to the charges against defendant. The computer searches introduced into evidence revealed defendant's interest in incestuous pornography and child sexually abusive material, which made it more likely

that defendant intended to touch his children's genitals for sexual gratification, an element of the crimes at issue.

Next, the prosecution satisfied the third prong because the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice. Evidence of child-pornography searches was highly probative of defendant's intent to commit CSC-II and assault with the intent to commit CSC involving penetration. The prejudicial impact of this evidence was limited because the prosecution only presented testimony about the titles of the child-pornography searches. The prosecution did not present images or descriptions of the videos that could bias or confuse the jury. Therefore, the risk of prejudice did not unfairly outweigh the probative value of the evidence. See MRE 403.

Finally, because the evidence of defendant's computer searches for child pornography was correctly placed before the jury and presented in proper context, the trial court had no need to give the jury a limiting instruction explaining how to consider that evidence. Thus, the prosecution met each prong of the *VanderVliet* standards, so the trial court did not abuse its discretion by admitting evidence of the searches.

## III. CONSTITUTIONALITY OF MCL 768.27a

Defendant insists that MCL 768.27a violates the separation-of-powers doctrine because the Legislature usurped the judiciary's power to create this State's rules of evidence when it permitted other-acts evidence to be admitted under that statute. At the trial, two witnesses testified that they had been sexually assaulted by defendant when they were ten years old. The trial court admitted that evidence under MCL 768.27a, which provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." Our Supreme Court has concluded that that statute "prevails over [MRE 404(b)] because it does not impermissibly infringe on this Court's authority regarding rules of practice and procedure under Const 1963, art 6, § 5." *People v Watkins*, 491 Mich 450, 455-456; 818 NW2d 296 (2012). Given the clarity of our Supreme Court's rejection of the very same argument made by defendant, see *id.* at 472-481, we find no merit in defendant's argument here.

Additionally, defendant did not preserve his constitutional challenge to MCL 768.27a by asserting that claim in the trial court, so we can only review the issue now for plain error affecting substantial rights. See *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015). Unsurprisingly, we find no plain error in the trial court's reliance upon MCL 768.27a to admit the testimony of the two witness who stated that defendant sexually assaulted them when they were ten years old. Our Supreme Court mandated that result, and the trial court faithfully applied MCL 768.27a in allowing the admission of the testimony from the two witnesses. Although defendant contends that *Watkins* was wrongly decided by our Supreme Court, this Court is obligated to follow our Supreme Court's decisions. *People v Walker*, 330 Mich App 378, 386 n 3; 948 NW2d 122 (2019). Therefore, the trial court did not commit error when it permitted the other-acts witnesses to testify as provided by MCL 768.27a.

## IV. VOUCHING FOR CREDIBILITY

Defendant claims the testimony from expert witnesses Brooke Rospierski and Alyssa Pliml impermissibly vouched for MD, but defendant did not preserve this issue, so our review is confined to a search for plain error affecting substantial rights. See *Cain*, 498 Mich at 116. "It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). An expert witness may not vouch for the credibility of the victim. *Id*. Expert testimony is generally admissible when it describes the "typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim . . . ." *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995). Further, "an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility." *Id*.

Our Supreme Court has explained that an expert physician's testimony that the victim was sexually assaulted was inappropriately admitted because it "was based, not on any findings within the realm of his medical capabilities or expertise as an obstetrician/gynecologist, but, rather, on the emotional state of, and the history given by, the complainant." *People v Smith*, 425 Mich 98, 112; 387 NW2d 814 (1986). The Court explained that the physician's testimony in effect was an "assessment of the victim's credibility." *Id*. at 113. More recently, our Supreme Court addressed this issue in *People v Thorpe*, 504 Mich 230; 934 NW2d 693 (2019). In the consolidated case of *People v Harbison*, the expert doctor stated that her examination of the victim showed no physical evidence of sexual assault, but the doctor concluded that the victim suffered pediatric sexual abuse solely based upon her own opinion that the victim's account of the assault was reliable. *Id*. at 262. Our Supreme Court concluded that "examining physicians cannot testify that a complainant has been sexually assaulted or has been diagnosed with sexual abuse without physical evidence that corroborates the complainant's account of sexual assault or abuse because such testimony vouches for the complainant's veracity and improperly interferes with the role of the jury." *Id*. at 235. With these principles in mind, we must consider the testimony of each expert at defendant's trial.

### A. BROOKE ROSPIERSKI

Defendant argues that Brooke Rospierski vouched for MD when she explained that part of the forensic interview protocol was to guard against suggestibility and coaching, but defendant has not pointed to any specific testimony to support that contention. Rospierski explained the protocol that forensic interviewers employ to create a neutral environment for children who have reported sexual abuse. She explained that forensic interviewers discuss the difference between truths and lies with child interview subjects to establish competency. As applied to MD, Rospierski testified that she established competency with MD, who disclosed during the forensic interview that he was sexually abused. The record does not support the assertion that Rospierski impermissibly bolstered MD's credibility. Unlike the expert witness in *Thorpe*, 504 Mich at 259, Rospierski did not testify that sexual abuse occurred or that MD was truthful. She just explained the protocol of the forensic interview that she conducted with MD. Rospierski provided testimony that permitted the jury to contextualize MD's failure to disclose abuse immediately. Under Michigan law, the prosecution may present evidence to generally explain "typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior . . . ." *Peterson*, 450 Mich at 352.

Rospierski's testimony was properly admitted to explain the procedure for interviewing children in sexual-assault cases.

## B. ALYSSA PLIML

Defendant asserts that Alyssa Pliml's expert testimony had no proper purpose because the anogenital exams that were performed on the children revealed no physical evidence of any abuse. Also, defendant argues that admitting irrelevant evidence bolstered MD's account of sexual abuse. Defendant has offered no authority stating that the admission of evidence of this nature constitutes impermissible bolstering of witness credibility. Nor has defendant explained how Pliml bolstered MD's credibility, especially since Pliml testified before MD took the witness stand.

As an expert, Pliml discussed the process of a SANE examination and its invasive nature. She explained that the examination may result in no physical evidence. Pliml testified that, during MD's examination, he was not willing to talk about being sexually assaulted. He just wanted the physical examination performed. The examination revealed no physical evidence of sexual abuse. But the children's SANE examinations occurred five years after any alleged abuse. Accordingly, the jurors could infer that no sexual abuse occurred, or they could infer that sexual abuse occurred and the children's bodies had healed from any injury that may have been inflicted. Pliml furnished no testimony regarding MD's credibility. Like the expert doctor in *Thorpe*, 504 Mich at 262, Pliml testified that the examination of MD yielded no physical evidence of sexual abuse. But unlike the expert doctor in *Thorpe*, Pliml did not suggest that MD was sexually abused or claim that MD was reliable. See *id*. Instead, she gave testimony enabling the jury to contextualize MD's accusations in relation to his physical examination and in relation to the physical examination of AD.

Significantly, the prosecution did not assert in closing argument that MD was less likely to lie about sexual abuse because he underwent an invasive SANE examination. "A prosecutor may not make a factual statement to the jury that is not supported by the evidence, but he or she is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case[.]" *Dobek*, 274 Mich App at 66 (citations omitted). In closing argument, prosecutors are allowed substantial latitude. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). The jurors knew that the prosecution's closing argument was not evidence because the trial court instructed them that "[m]any things are not evidence and you must be careful not to consider them as such" including "the lawyer's statements and arguments." "[J]urors are presumed to follow their instructions." See *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). In this case, the prosecution simply and properly offered the reasonable inference that MD did not go through with an invasive examination to maintain an elaborate lie.

Affirmed.

/s/ James Robert Redford
/s/ Christopher P. Yates