*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SAAD ARBABE,

        Defendant-Appellant.

UNPUBLISHED
November 16, 2023

No. 355439
Kalamazoo Circuit Court
LC No. 2016-000012-FC

Before: GLEICHER, C.J., and RICK and MALDONADO, JJ.

PER CURIAM.

This case arises from defendant's 2016 jury trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b) (penetration of a person under 13 while defendant is older than 17), and three counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b) (sexual contact with a person under 13 while defendant is older than 17). Defendant is currently serving two terms of 25 to 50 years' imprisonment for the CSC-I convictions and 5 to 15 years' imprisonment for each of the CSC-II convictions. The sentences for the CSC-II convictions are concurrent with each other but consecutive to the sentences imposed for the CSC-I convictions.[1] Defendant appeals as on leave granted[2] the trial court's June 8, 2020 order denying his motion for relief from judgment. We reverse.

---

[1] A panel of this Court affirmed defendant's convictions and sentences in a prior appeal. *People v Arbabe*, unpublished per curiam opinion of the Court of Appeals, issued November 28, 2017 (Docket No. 335505).

[2] *People v Arbabe*, 509 Mich 929 (2022).

# I. BACKGROUND

## A. UNDERLYING FACTS

### 1. INITIATION AND DISCOVERY OF THE ABUSE

This case involves defendant; his ex-wife, TraVivra Arbabe; TraVivra's son from a prior relationship, JA; and two children TraVivra and defendant have in common, HA and BA. Defendant is from Morocco, and he met TraVivra online in 2007. The pair became romantically involved, they got married in 2008, and defendant relocated to the United States in 2009. JA was 18 months old when defendant relocated, and HA and BA were born after the relocation. The relationship quickly deteriorated, with TraVivra describing defendant as a violent man, and the couple eventually divorced. Defendant had parenting time with all three children, including JA, every weekend, beginning Friday evening and ending Sunday afternoon.

TraVivra began to have concerns about defendant's parenting time when the children reported to her that defendant's mother, Rabia Houggati, was mistreating them. These concerns heightened when TraVivra received a phone call from HA's teacher, Anne Stopher, reporting that HA would have a "breakdown" every Friday, during which he cried and became inconsolable. TraVivra stopped allowing the children to be alone with defendant in September 2015 after BA returned from defendant's parenting time with a bruise on his face. TraVivra testified that, in October 2015, HA disclosed to her that he was being sexually abused by defendant. JA overheard this conversation and likewise disclosed that defendant was sexually abusing him.

### 2. TESTIMONY OF HA AND JA

JA, who was 11 years old at the time of trial, testified that defendant would anally penetrate him with his penis. JA testified that this would occur in defendant's living room while HA and BA were playing video games in the bedroom and that it was painful. JA also described an instance in which defendant squeezed JA's penis and an instance in which defendant performed fellatio on JA. JA testified that the assaults occurred almost every time he went to defendant's home when he was eight and nine years old. JA did not see defendant assaulting his brothers, but there were times when he heard his brothers crying and saying: "ouch, ouch, can you quit?" JA testified that he knew defendant was abusing HA and BA when he heard this because it was what would happen to him.

HA, who was six years old at the time of trial, likewise testified to having been anally penetrated by defendant. Similar to JA, defendant would assault HA in the living room while JA and BA were in the bedroom playing video games. During the assaults, defendant would turn up the volume on the television to drown out the sound. HA testified that defendant had also attempted to make HA put HA's penis inside of defendant's anus. HA described another incident during which defendant squeezed HA's penis in the bedroom while JA and BA were in the living room. HA testified that he did not want to tell anyone because defendant had threatened to kill him if he did and that he cried at school on the end of the day on Fridays because he did not want to go to defendant's house. Unlike JA, HA did not observe abuse perpetrated against his siblings aside from defendant slapping BA.

### 3. EXPERT TESTIMONY

Connie Black-Bond, the clinical director and cofounder of the Southwest Michigan Children's Trauma Assessment Center, testified for the prosecution as an expert in the assessment and treatment of children, particularly with characteristics of child sexual abuse, delayed disclosure, trauma, and memory. Black-Pond specified that she never spoke to the children involved in this case and was only providing general testimony on how children could react following trauma. She explained that stress reactions can present differently in different children.

First, Black-Pond testified about delayed disclosure. She explained that children often postpone telling anyone about sexual abuse that they experienced due to several factors: fear, lack of understanding of what is happening, lack of understanding of what will happen if they do disclose, threats, and lack of opportunity. According to Black-Pond, children believe that sexual abuse was their fault or that they did something to provoke it. Black-Pond testified that children more frequently delay disclosure when they are being abused by a relative, rather than a stranger, and that siblings may not disclose abuse because they are trying to protect each other. Next, Black-Pond testified about children's memory of traumatic events and explained that children remember specific events, such as a fight; however, they may not remember all the details surrounding the event, such as the date and time. Children are unlikely to remember exact dates unless the event was matched with something impressionable, such as a birthday. She explained that it is normal for children to disclose an event and then later add additional details. In regard to coaching, Black-Pond stated that in extreme cases, a child could be told something so frequently that it becomes part of the child's memory. Whether a child would be susceptible to coaching depends on the child's age and vulnerability. The child's descriptions would reflect coaching, rather than providing quick, consistent responses to questions or age-appropriate responses.

Dr. Sarah Brown, a child abuse pediatrician, testified for the prosecution as an expert in pediatric medicine and treatment of child physical and sexual abuse. Dr. Brown examined both children and a sexual assault nurse examiner took medical histories from both children prior to Dr. Brown's examination. Both kids described the sexual abuse to the nurse, and JA disclosed that defendant would also assault HA. JA's physical examination was completely normal, but Dr. Brown testified that this was consistent with the abuse JA had described. HA's anal examination was completely normal, but he had a small scar on the tip of his penis. Dr. Brown testified that this injury was consistent with the medical history and opined that it could have formed as the result of a blood blister that arose when defendant squeezed HA's penis. However, she conceded on cross-examination that this opinion was speculative and that the injury would not have been indicative of abuse absent the medical history that had been taken. Finally, Dr. Brown noted on redirect examination that HA had experienced constipation and that this was common among children who had experienced anal penetration.

### B. POSTCONVICTION PROCEDURAL HISTORY

At the conclusion of the trial, defendant was found guilty of two counts of CSC-I and three counts of CSC-III, and he was sentenced as explained above. Defendant appealed, arguing that the prosecutor engaged in misconduct during closing arguments, that his defense attorney was ineffective for failing to object to the improper arguments, and that his 25-year mandatory minimum sentence was unconstitutional. *People v Arbabe*, unpublished per curiam opinion of the

Court of Appeals, issued November 28, 2017 (Docket No. 335505). This Court concluded that each of defendant's arguments were without merit, *Id.*, and our Supreme Court subsequently denied defendant's application for leave to appeal. *People v Arbabe*, 502 Mich 938; 915 NW2d 461 (2018).

In March 2020, defendant, acting *in propria persona*, filed a motion for relief from judgment in the trial court, and he argued that the circuit court failed to properly obtain jurisdiction over his case, that there was insufficient evidence to prove his guilt beyond a reasonable doubt, and that he was denied the effective assistance of counsel at both the trial and appellate levels. In April 2020, defendant filed a supplement to his motion for relief from judgment in which he argued that the trial court erred by admitting improper hearsay testimony that served to bolster the credibility of JA and HA. In June 2020, the trial court entered an opinion and order rejecting each of defendant's claims of error and denying his motion for relief from judgment. In November 2020, defendant, still acting *in propria persona*, filed an application for leave to appeal in this Court, but this motion was denied.[3] Defendant then filed an application seeking leave to appeal in the Supreme Court, and the Supreme Court, in lieu of granting leave to appeal, remanded the case to this Court to hear as on leave granted.[4]

On remand, this Court determined that defendant was entitled to an attorney and entered an order mandating that the circuit court appoint counsel to act on defendant's behalf.[5] The circuit court complied, and a public defender has briefed the issues on defendant's behalf; however, defendant nevertheless elected to prepare a Standard 4 Brief[6] to supplement his attorney's work. The case is now before us fully ripe to be heard on its merits.

## II. STANDARDS OF REVIEW AND GOVERNING LAW

### A. MOTIONS FOR RELIEF FROM JUDGMENT

This Court reviews "a trial court's decision on a motion for relief from judgment for an abuse of discretion and its findings of facts supporting its decision for clear error." *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes or makes an error of law." *Id.* at 628-629 (citations omitted).

"Subchapter 6.500 of the Michigan Court Rules establishes the procedures for pursuing postappeal relief from a criminal conviction. The subchapter is the exclusive means to challenge

---

[3] *People v Arbabe*, unpublished order of the Court of Appeals, entered January 29, 2021 (Docket No. 355439).

[4] *People v Arbabe*, 509 Mich 929 (2022).

[5] *People v Arbabe*, unpublished order of the Court of Appeals, entered April 13, 2022 (Docket No. 355439).

[6] Defendant's Standard 4 Brief was filed pursuant to Administrative Order No. 2004-6, 471 Mich c, cii (2004).

a conviction in Michigan once a defendant has exhausted the normal appellate process." *People v Watroba*, 193 Mich App 124, 126; 483 NW2d 441 (1992).

Defendant has the burden of establishing entitlement to relief.  MCR 6.508(D).  According to MCR 6.508(D)(3), in pertinent part, the court may not grant relief if the motion:

> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
>
> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
>
> (b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,
>
> (*i*) in a conviction following a trial,
>
> (A) but for the alleged error, the defendant would have had a reasonably likely chance of acquittal;

"The requirement of 'good cause' can be established by proving ineffective assistance of counsel." *Swain*, 288 Mich App at 631.

## B.  ADMISSION OF EVIDENCE

In general, evidentiary challenges are reviewed for abuse of discretion.  *Thorpe*, 504 Mich at 251.  "The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls 'outside the range of principled outcomes.'  A decision on a close evidentiary question ordinarily cannot be an abuse of discretion."  *Id.* at 251-252 (quotation marks and citation omitted).

Unpreserved evidentiary challenges are reviewed for plain error, and a plain error occurs if three requirements are "met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citation omitted).  Even if the three requirements are met, "reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. at 763 (quotation marks, citation, and alterations omitted).

## C.  INEFFECTIVE ASSISTANCE OF COUNSEL

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007).  When

there is no evidentiary hearing held on the issue of ineffective assistance of counsel, this Court's review is limited to errors apparent on the record. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). "A defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel's error, the outcome of the trial would have been different." *Id*.

## III. EXPERT TESTIMONY

Defendant argues that he is entitled to a new trial because the trial court admitted improper testimony from the prosecution's two expert witnesses. We agree.

MRE 702 provides that witnesses who are qualified as experts in a field may testify regarding their opinions on matters related to that field. "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." MRE 704. The issue before us is how these rules apply to the testimonies of Dr. Brown and Dr. Black-Pond. This issue—the permissibility of expert testimony in child sexual abuse cases—has been discussed extensively by the Michigan Supreme Court.

First, in *People v Smith*, 425 Mich 98, 101; 387 NW2d 814 (1986), the Court addressed in two consolidated appeals whether it was permissible to allow "the examining physicians to testify that the complainants had been sexually assaulted." The Court determined that it is impermissible to admit testimony that a victim was sexually assaulted if the opinion was "based solely on what the victim had told" the doctor because "the jury was in just as good a position to evaluate the victim's testimony" as the doctor; therefore, "the doctor's opinion was superfluous." *Id*. at 109. However, under certain circumstances, it can be permissible for a doctor to testified to the doctor's opinion that the victim was sexually assaulted if "[t]he doctor's opinion was grounded upon objective evidence," usually arising from the physical examination, rather than an assessment of the veracity of the medical history. *Id*. at 114-115.

Nearly a decade later, the Supreme Court was charged with determining "the proper scope of expert testimony in childhood sexual abuse cases" when it decided *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995). The Court explained that "[t]he question that arises in such cases is how a trial court must limit the testimony of experts while crafting a fair and equitable solution to the credibility contests that inevitably arise." *Id*. The Court held that expert testimony in these cases was subject to the following limitations: "(1) an expert may not testify that the sexual abuse occurred, (2) an expert may not vouch for the veracity of a victim, and (3) an expert may not testify whether the defendant is guilty." *Id*. The Court likewise articulated permissible forms of expert testimony: "(1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse

-6-

victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility." *Id*. at 352-353. Regarding the second realm of permissible testimony, the Court clarified that such testimony was only permissible if the defendant argued "that the victim's behavior was inconsistent with that of a typical victim of child sexual abuse . . . ." *Id*. at 376-377.

The issue arose again in 2019 when the Supreme Court decided two consolidated appeals in *People v Thorpe*, 504 Mich 230; 934 NW2d 693 (2019). The Court reaffirmed it prior holdings that "an examining physician cannot give an opinion on whether a complainant had been sexually assaulted if" this opinion "is based on what the victim told the physician. Such testimony is not permissible because a jury is in just as good a position to evaluate the victim's testimony as the doctor." *Id*. at 255 (quotation marks and citations omitted). However, "an examining physician, if qualified by experience and training relative to treatment of sexual assault complainants, can opine with respect to whether a complainant had been sexually assaulted when the opinion is based on physical findings *and* the complainant's medical history." *Id*. So, the victim's statements can be part of the basis for the doctor's opinion only if they are considered in conjunction with *physical* evidence uncovered during an examination. Applying these principles to one of the cases before it, the Supreme Court concluded that a plain error affecting substantial rights occurred when an expert testified that the child victim "suffered 'probable pediatric sexual abuse' . . . ." *Id*. at 260-261. This was because the doctor "candidly acknowledged that her examination of TH showed no physical evidence of an assault. Her conclusion that TH suffered 'probable pediatric sexual abuse' was based solely on her own opinion that TH's account of the assaults was 'clear, consistent, detailed[,] and descriptive.' " *Id*. at 261-262. The error was "plain" because the relevant case law "was unanimous and has never been called into question" and provided "a very straightforward bright-line test that trial courts can readily observe." *Id*. at 262. The Court concluded that the error affected defendant's substantial rights because it was "far more pernicious than a mere evidentiary error." *Id*. at 264. This was because the doctor vouched for the child's credibility and "invaded the province of the jury to determine the only issue in the case." *Id*. at 265. "To a jury recognizing the awesome dilemma of whom to believe, an expert will often represent the only seemingly objective source, offering it a much sought-after hook on which to hang its hat." *Id*. at 263-264 (quotation marks and citation omitted).

Finally, the Supreme Court discussed how impactful it is on the defendant's due process rights when testimony violative of the cases discussed above is admitted when it decided *People v Uribe*, 508 Mich 898; 962 NW2d 644 (2021). In that case, the victim's examining physician testified that he believed the victim had been sexually abused "on cross-examination, redirect, and recross-examination." *Id*. at 898. This was and error because the "testimony was not supported by physical evidence" and "[w]ithout physical corroboration, testimony by an examining physician that sexual abuse occurred impermissibly vouches for the complainant's credibility and veracity." *Id*. at 899. The Supreme Court was unsatisfied by the trial court's decision to offer a curative instruction instead of granting defendant's motion for a mistrial:

> [S]uch an instruction was an insufficient remedial measure. This kind of error is far more pernicious than a mere evidentiary error. In cases with no corroborating evidence, which boil down to credibility contests, a jury may credit an expert's opinion with enormous weight. Once the jury heard [the doctor] affirmatively and repeatedly testify that it was his opinion that the complainant was sexually abused,

the curative instruction was insufficient to erase the prejudice suffered by the defendant. [*Id*. at 899-900 (quotation marks and citations omitted).]

## A. DR. SARAH BROWN

Reversal is necessary because Dr. Brown's testimony impermissibly vouched for the victims' credibility, and her diagnosis of definite pediatric sexual abuse was not based on physical evidence.

Dr. Brown's testimony on direct examination was permissible. She did not suggest that she believed the children had been sexually abused, she simply explained the findings of her physical examinations and opined that her finings were consistent with the medical histories provided by the children and their mother. However, during cross-examination she offered testimony violative of the cases discussed above. Defense counsel began by thoroughly establishing that there was no physical evidence of abuse with respect to either child other than the scar on HA's penis. Defense counsel then asked about the bases for Dr. Brown's opinion:

> *Q.* So you based you conclusions of definite pediatric sexual abuse based solely on what was told to you by [the nurse who took the medical history]—James through [the nurse] and [JA's] mother?

> *A.* Yes, that is correct.

Dr. Brown plainly admitted that there was no physical evidence that JA was abused, but she nonetheless testified that she concluded he was sexually abused based solely on what JA said; this is precisely the sort of vouching that the Supreme Court condemned in the above cases.

Dr. Brown was then expanded on the basis for her conclusion, and she testified as follows:

> All three boys had reported witnessing each other being abused so in our field that's considered to be a very high level of evidence that something had happened in terms of our medical evaluation of a child. The details that these children were giving were very clear and based on their ages and their experiences, it was no knowledge that they would have had from any other sources other than having experienced it.

This testimony was particularly egregious because she went beyond simply stating that she believed the children were abused; rather, she detailed the reasons why she believed each of the three children were credible. She even testified that it was considered strong evidence of truthfulness "in our field," which implicitly asserted her authority as one who was better situated than lay people to assess the credibility of these children.

The only physical sign of abuse on either child was the scar on HA's penis, but Dr. Brown's testimony suggests that this injury only had meaning due to the allegations of abuse:

> *Q.* [H]ad there not been allegations of any kind of abuse, this kind of would have been an inconclusive finding?

-8-

*A.*  That is correct.

*Q.*  So if you were to have performed a medical exam on a child that no one said anything happened to and you found that scar, that wouldn't raise any red flags?

*A.*  I might ask a few more questions but it wouldn't make me particularly concerned for abuse.

Even during direct examination Dr. Brown described the scar as "quite an unusual finding" and testified that "[m]ost things that happen to a penis in terms of sexual abuse to children do not leave scars . . . ."  Therefore, the necessary implication was that Dr. Brown only believed that the scar was the result of sexual abuse because she believed that HA and JA were being truthful.

On redirect examination, Dr. Brown testified that her assessment of HA was based partially on his reports of constipation and nightmares.  However, our Supreme Court has demanded that a doctor's opinion that a child was sexually abused be based on "physical findings" or "physical corroborations."  *Thorpe*, 504 Mich at 225; *Uribe*, 508 Mich at 898-900.  Reports of constipation and nightmares are statements that Dr. Brown believed to be truthful rather than physical evidence she observed during her examination.  Dr. Brown also testified that there was "a long list of symptoms" the children had experienced and that HA "had a whole constellation of symptoms that were pointing towards being caused by his abuse," but she did not specify what any of these symptoms were.

For these reasons, we are bound by Supreme Court precedent to conclude that the testimony of Dr. Brown was inadmissible and highly prejudicial to the due process rights of defendant.  Below, we discuss the practical implications of this conclusion.

## B.  BASIS FOR REVERSAL

Defendant cannot establish plain error.  He waived direct review of the substantive claim because the impermissible testimony was elicited by defense counsel.  However, defendant is entitled to reversal based on ineffective assistance arising from defense counsel's decision to elicit testimony that was plainly inadmissible and highly prejudicial.

## 1.  PLAIN ERROR

Defendant cannot establish plain error because the impermissible testimony was elicited by defense counsel.

"A defendant must raise an issue in the trial court to preserve it for [this Court's] review."  *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012).  Because there was no objection in the trial court to the impermissible testimony, we review the substantive argument for plain error.  *Carines*, 460 Mich at 763.  However, defendant waived his right to argue that the admission of the testimony was plain error because the testimony was elicited by defense counsel.  "This Court has defined 'waiver' as the intentional relinquishment or abandonment of a known right."  *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (quotation marks and citation omitted).

"One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Buie*, 491 Mich 294, 306; 817 NW2d 33 (2012) (quotation marks and citation omitted). We cannot allow defendant to elicit this testimony at trial only to object later as this would provide him "with 'an appellate parachute.' " *Id*. at 313.

## 2. INEFFECTIVE ASSISTANCE

Defendant has established a valid claim of ineffective assistance of counsel, but because this issue was not pursued on direct appeal, this alone is insufficient to warrant reversal.

While defendant cannot prevail under the plain error standard, "[t]he standards for 'plain error' review and ineffective assistance of counsel are distinct, and therefore, a defendant can obtain relief for ineffective assistance of counsel even if he or she cannot demonstrate plain error." *People v Hughes*, 506 Mich 512, 523; 958 NW2d 98 (2020), citing *People v Randolph*, 502 Mich 1; 917 NW2d 249 (2018). As discussed above, the Supreme Court has thoroughly discussed how damaging it is for an expert witness to vouch for the credibility of a victim. Indeed, the testimony in this case was more damaging than the particular testimonies addressed by our Supreme Court. In particular, Dr. Brown testified about a diagnosis of *definite* pediatric sexual abuse; the defendant in *Thorpe*, was irreparably harmed by admission of testimony regarding *probable* pediatric sexual abuse. *Thorpe*, 504 Mich at 260-261. Moreover, in this case, Dr. Brown explicitly stated that her diagnosis was based solely on what the children told her and the specific circumstances that, in her expert view, bolstered the credibility of these children. While less severe than this case, the facts of *Thorpe* were nevertheless harmful enough to rise to the level of plain error affecting substantial rights. *Id*. at 262. It would be difficult to imagine testimony that more clearly and severely violates the "very straight forward bright-line test"[7] articulated and applied by the Supreme Court in *Smith*, *Peterson*, *Thorpe*, and *Uribe*.

A critical fact in this case is that the impermissible testimony was elicited by defense counsel rather than the prosecution. In fact, defense counsel was the first person to use the words "definite pediatric sexual abuse." It would be of little comfort to defendant to know that his due process rights were so egregiously violated by defense counsel rather than the prosecution. Indeed, that this highly prejudicial testimony was brought into evidence by the person tasked with being defendant's advocate is perhaps a larger failure of our justice system. We acknowledge that trial counsel's decisions are presumed to be the exercise of valid trial strategy. *People v Traver*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019). However, we are likewise aware that "a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Given how thoroughly this type of testimony has been condemned by our Supreme Court, we can surmise no defensible strategy based upon eliciting it.

The magnitude of this error, as described by our Supreme Court, mandates a finding of prejudice—that there is a reasonable probability that the outcome of the trial would have been different but for defense counsel's decision to elicit testimony from Dr. Brown vouching for the

---

[7] *Thorpe*, 504 Mich at 262.

credibility of the children. See *Sabin*, 242 Mich App at 659. As our Supreme Court explained, this was "far more pernicious than a mere evidentiary error" because "an expert will often represent the only seemingly objective source" in what is a pure credibility contest. *Thorpe*, 504 Mich at 263-264. This case hinged on whether the jury believed that HA and JA were telling the truth, so Dr. Brown's testimony vouching for their credibility, according to the Supreme Court, was critical. Therefore, defendant has established ineffective assistance of counsel.

## 3. RELIEF FROM JUDGMENT

We conclude that the trial court abused its discretion by denying defendant's motion for relief from judgment.

Because this is an appeal from a motion for relief from judgment, rather than a direct appeal, our conclusion that defendant has established a valid claim of ineffective assistance of counsel is not the final step of the analysis. Reversal of defendant's conviction requires a conclusion that the trial court abused its discretion by denying his motion for relief from judgment. Because this claim of ineffective assistance could have been pursued on direct appeal, prevailing on this motion required defendant to establish good cause for failure to raise the ground on direct appeal as well as actual prejudice arising from the grounds for relief. MCR 6.508(D)(3). Regarding actual prejudice, this is established if "defendant would have had a reasonably likely chance of acquittal" if not for the error. MCR 6.508(D)(3)(*i*)(A). As discussed above in section III.B.2, *supra*, there was a reasonably probability of an acquittal had defense counsel rendered effective assistance. While these two standards are distinct, in the context of this case, the facts establishing prejudice for defendant's ineffective assistance claim likewise establish prejudice for the purposes of defendant's motion for relief from judgment.

The other barrier to relief is a showing of good cause for defendant's failure to raise the argument in his initial appeal. "The requirement of 'good cause' can be established by proving ineffective assistance of counsel." *Swain*, 288 Mich App at 631. We conclude that the requirement of good cause has been met in this case because defendant's appellate counsel rendered ineffective assistance by failing to raise the issue during defendant's direct appeal. "[T]he test for ineffective assistance of appellate counsel is the same as that applicable to a claim of ineffective assistance of trial counsel. Hence, defendant must show that his appellate counsel's decision not to raise a claim of ineffective assistance of trial counsel fell below an objective standard of reasonableness and prejudiced his appeal." *People v Uphaus*, 278 Mich App 174, 186; 748 NW2d 899 (2008) (citation omitted). As discussed in section III.B.2, *supra*, the admission of Dr. Brown's testimony vouching for the credibility of the children was such a clear mistake that, had it not been elicited by defense counsel, would have constituted plain error. See *Thorpe*, 405 Mich at 262-264. The error prejudiced defendant's appeal because he established a valid claim of ineffective assistance, and therefore, defendant would have prevailed on his initial appeal had the issue been raised then. Because the failure to raise this issue on direct appeal was the result of ineffective assistance of appellate counsel, the good cause requirement has been established. *Swain*, 288 Mich App at 631.

## IV. CONCLUSION

We conclude that the trial court abused its discretion by denying defendant's motion for relief from judgment because Dr. Brown's testimony impermissibly vouched for the credibility of

JA and HA; because defense counsel violated well-established Supreme Court precedent—to the detriment of his client—by eliciting this testimony; and because defendant's appellate counsel rendered ineffective assistance by failing to raise this issue during defendant's direct appeal. Therefore, defendant's conviction is reversed. This issue alone being sufficient to reverse defendant's conviction, we need not address the other issues raised by defendant. This case is remanded to the trial court for additional proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado